1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

RAYMOND PADILLA,                         )
                                          )        CV-N-05-0215-LRH (VPC)
          Plaintiff,                      )
                                          )
     vs.                                  )        **REPORT AND RECOMMENDATION**
                                          )        **OF U.S. MAGISTRATE JUDGE**
E.K. MCDANIEL, ET AL.,                    )
                                          )
          Defendants.                     )        April 27, 2006
_____)

        This Report and Recommendation is made to the Honorable Larry R. Hicks, United States

District Judge.  The action was referred to the undersigned Magistrate Judge pursuant to 28

U.S.C. § 636(b)(1)(B) and LR IB 1-4.  Before the court is defendants' motion for summary

judgment (#30).  Plaintiff opposed (#37), defendant replied (#35), and plaintiff, per this court's

order (#40), filed a supplement to his opposition (#55).  Also before the court is plaintiff's motion

for injunctive relief (#31/32).  Defendants opposed (#38).  Also before the court is plaintiff's

motion for default judgment (#49).  Defendants opposed (#52).

        The court has thoroughly reviewed the record and the motions and recommends that

defendants' motion for summary judgment be granted (#30).  The court further recommends that

plaintiff's motion for injunctive relief (#31/32) be denied and that plaintiff's motion for default

judgment (#49) be denied.

## I.  HISTORY & PROCEDURAL BACKGROUND

        Plaintiff Raymond Padilla ("plaintiff") is a prisoner at Ely State Prison ("ESP") in the

custody of the Nevada Department of Corrections ("NDOC") (#17).  Plaintiff brings his

complaint pursuant to 42 U.S.C. § 1983, alleging prison officials violated his Eighth Amendment right against cruel and unusual punishment and his Fourteenth Amendment right to due process by failing to provide him with adequate medical treatment.[1]  *Id.*  Plaintiff names as defendants Kenny Guinn, governor of Nevada; Jackie Crawford, NDOC director; Ted D'Amico, NDOC medical director; E.K. McDaniel, ESP warden; and Dr. Steven MacArthur, ESP medical director.[2]  *Id*

In count I, plaintiff alleges prison medical staff failed to provide adequate treatment for his icthyosis, a skin condition which causes severe dry, scaly, cracking, skin.  *Id*.  Plaintiff claims that he suffers extreme discomfort, itching, bleeding and scarring because the prescription he received from a dermatologist was either not filled or was discontinued.  *Id*.  In count II, plaintiff contends that defendants failed to comply with NDOC regulations regarding inmates' medical treatment.  *Id*.  Plaintiff alleges that defendants violated his Fourteenth Amendment due process rights because they discontinued treatment that alleviated plaintiff's symptoms without justification and without giving plaintiff an opportunity to challenge the decision.  *Id*.

Defendants attached a sworn summary of plaintiff's medical records and kites relating to the icthyosis, completed by the NDOC health information director (#30, Ex. A).  The report showed seventeen notations of creams, lotions, oils, and bath oils, several of which appear to be prescriptions, which medical staff dispensed to plaintiff between 1992 and 2003 (no entries

---

[1]Plaintiff originally filed suit in state court (#1, Ex. A; #12).  Defendants removed to federal court pursuant to 28 U.S.C. § 1441(a)-(c) because this civil rights claim is an action arising under U.S. law over which the District Court has original jurisdiction pursuant to 28 U.S.C. § 1331 (#1).  The court issued an order dismissing count II, which alleged that plaintiff's Fourteenth Amendment due process rights were violated, with leave to amend (#11).  The court found that plaintiff failed to allege facts establishing that any process prescribed by Nevada law with respect to medical care for prisoners both (1) creates a liberty interest subject to due process protections and (2) was not complied with in plaintiff's case.  *Id*.  Plaintiff filed his amended complaint on May 25, 2005 (#17).

[2]Most of defendants' pleadings, including the summary judgment motion, incorrectly name NDOC as a defendant and fail to include Governor Kenny Guinn (*See* #30).

appear from 1997-2000).  *Id*.  A dermatologist saw plaintiff in 2003 and prescribed two products to be used three times per week for four months.  *Id*.  The report reflects that plaintiff submitted 141 medical kites related to his skin condition from 1992 through September 2004.  *Id*.  Most of the notations do  not indicate whether or what response plaintiff received.  *Id*.  Generally, the kites request more cream or lotion or prescription refills because plaintiff ran out, or different products because plaintiff stated what he was using was not working.  *Id*.  Many kites request doctor appointments.  *Id*.  The response to one kite seeking an appointment states that plaintiff could not have the appointment according to custody (*Id.*, medical kite notation dated 7/27/02).  The response to a kite requesting vitamin E cream because Eucerin was not working explained:  "Do the best you can.  We cannot get Vitamin E cream here.  This medicine is the same as the dermatologist ordered" (*Id.*, kite notation dated 3/11/93).  A response to plaintiff's kite seeking his medical records states:  "Ichthyosis is not serious–only very dry skin.  I am not the money man, but the canteen does sell lotion, oil, etc. when you get money" (*Id.*, kite notation dated 4/14/94; *see also* kite notation dated 4/26/94 again directing plaintiff to purchase oil and lotion in the canteen).

In 1996, medical staff refilled plaintiff's prescriptions pursuant to plaintiff's kite (*Id.*, kite notation dated 8/6/96).  One 2001 kite response indicates that plaintiff received lotion he sought (*Id.*, notation dated 3/20/01).  In January 2002, staff advised plaintiff that a specialist consult was requested for plaintiff and also advised plaintiff to purchase baby oil and vitamin E in the canteen (*Id.*, kite notations dated 1/6/02; 1/17/02).  In May 2002, plaintiff received prescription ointment (*Id.*, kite notations dated 5/14/02; 5/23/02).  In July 2002, medical staff informed plaintiff that they were trying to locate oral vitamin A for a trial of high dose therapy (*Id.*, kite notation dated 7/17/02, staff also noted "[d]ermatology recommended 40% urea, but you did not like the 12%

urea, are you willing to try the 40%?").  In August 2002, plaintiff submitted two kites seeking vitamin E bath oil and vitamin D pills, but the response to the second kite indicates that plaintiff then refused the vitamin E oil, and that, based on dermatology's recommendation, plaintiff was to try to 40% urea lotion before oral medications (*Id.*, kite notations dated 8/8/02; 8/16/02). Plaintiff submitted an October 2003 kite to Dr. MacArthur complaining about the cream he used, to which Dr. MacArthur responded that the cream was recommended by a very good dermatologist and it was up to plaintiff whether to use it (*Id.*, kite notation dated 10/4/03).  In August 2004, plaintiff was advised that the Utilization Review Committee denied him a dermatologist visit (*Id.*, kite notation dated 8/26/04).

At the conclusion of the report, the NDOC health information director states that plaintiff has received adequate treatment for his incurable condition and points out that a dermatologist saw plaintiff and he has received many different prescription and non-prescription treatments. *Id.*  The health information director also notes that, according to a Penn State College of Medicine resource, ichthyosis is a lifelong problem, but has no serious complications when treated properly, and that Harvard Medical Schools Consumer Information advises that moisture-retaining creams are the appropriate treatment.  *Id.*  The Penn State resource the director refers to also states that the condition may be "intensely itchy, and scratching may lead to broken skin and infection." *Id.*, p. 34.

Dr. Steven MacArthur attests in his affidavit that icthyosis is a congenital skin disease, which is not painful and has no serious complications, and for which plaintiff has been prescribed over a dozen different treatments. *Id.*, Ex. B.  Dr. MacArthur further states that Vaseline is an adequate remedy used successfully by some his private patients.  *Id.*

Pursuant to this court's order (#40), plaintiff reviewed his medical records and filed a supplement to his opposition to summary judgment (#55). Plaintiff alleges that defendants refused to provide him with his complete medical files for 2004, 2005 and 2006, but fails to explain what is missing. *Id.* In his supplement, plaintiff for the first time states that he is only alleging that he has been denied treatment since 2004; he acknowledges that he received treatment for eleven years prior to 2004. *Id.* He asserts that the last prescription he received was in October 2003. *Id.*

Plaintiff also filed a motion he styled motion for default judgment pursuant to Fed. R. Civ. P. 37(b)(2) (#49), in which he again claims that certain medical records were removed prior to his review. It is unclear if plaintiff actually seeks Fed. R. Civ. P. 55 default judgment, or sanctions pursuant to Rule 37(b)(2). Defendants opposed and stated that because plaintiff failed to identify what documents he believes were removed, defendants could not address the allegation (#52). Defendants included the affidavit of the ESP health information coordinator, which states that plaintiff had a three-hour review of his medical records on December 19, 2005. *Id.* The affidavit states that thereafter, plaintiff submitted several requests for copies of documents from his medical records and was allowed to keep the copies in his cell. *Id.* Defendants attach several copy requests submitted by plaintiff. *Id.*

Defendants move for summary judgment (#30).

## II. DISCUSSION & ANALYSIS

### A. Discussion

### 1. Motion for default judgment

When considering whether to enter a default judgment, the court should consider "(1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the

sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits." *Eitel v. McCool*, 782 F.2d 1470, 1471-2 (9th Cir. 1986); *see also Al-Torki v. Kaempin*, 78 F.3d 1381, 1384 (9th Cir. 1996).

### 2. Motion for summary judgment

Summary judgment allows courts to avoid unnecessary trials where no material factual disputes exist. *Northwest Motorcycle Ass'n v. U.S. Dept. of Agriculture*, 18 F.3d 1468, 1471 (9th Cir. 1994). In deciding whether to grant summary judgment, the court must view the evidence and any inferences arising from the evidence in the light most favorable to the nonmoving party. *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir. 1996). The court grants summary judgment if no genuine issues of material fact remain in dispute and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(C). Judgment as a matter of law is appropriate where there is no legally sufficient evidentiary basis for a reasonable jury to find for the nonmoving party. FED. R. CIV. P. 50(a). Where reasonable minds could differ on the material facts at issue, however, summary judgment should not be granted. *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995), *cert. denied*, 516 U.S. 1171 (1996).

The moving party bears the burden of informing the court of the basis for its motion, and submitting evidence which demonstrates the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317 , 323 (1986). Once the moving party has met its burden, the party opposing the motion may not rest upon mere allegations or denials in the pleadings but must set forth specific facts showing that there exists a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Only evidence which might be admissible at trial may be considered by the court in ruling on a motion for summary judgment. FED. R. CIV. P. 56(c); *Beyene v. Coleman Security Services, Inc.*, 854 F.2d 1179, 1181 (9th Cir. 1988). Evidence without a proper foundation cannot support a motion for summary judgment. *Canada v. Blain's Helicopters, Inc.*, 831 F.2d 920, 925 (9th Cir. 1987).

Material facts are facts that might affect the outcome of the case; the court determines materiality by reference to the substantive law that controls the case. *Anderson*, 477 U.S. at 248. Disputes over irrelevant or unnecessary facts should not be considered. *Id*. If, given the evidence submitted, a reasonable jury could hold for the nonmoving party, the dispute over material fact is "genuine." *Id*. Where there is a complete failure of proof on an essential element of the case for the nonmoving party, all other facts become immaterial, and the moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 323.

### 3. Motion for preliminary injunction

To warrant preliminary injunctive relief in the Ninth Circuit, the petitioner must demonstrate either: (1) a likelihood of success on the merits and the possibility of irreparable injury, or (2) that serious questions going to the merits were raised and the balance of hardships tips sharply in his or her favor. *Southwest Voter Registration Educ. Project v. Shelley*, 344 F.3d 914, 917 (9th Cir. 2003). Preliminary injunctive relief is designed to "preserve the status quo and prevent irreparable harm until the court has an opportunity to rule on the lawsuit's merits." *Lebron v. Comm'n John Armstrong*, 289 F. Supp.2d 56, 61 (D. Conn. 2003) (citation and internal quotations omitted). To prevail on a motion for preliminary injunction, the court must first inquire whether plaintiff's constitutional claims will likely prevail on the merits. *Luckette v. Lewis*,  883 F. Supp. 471, 475 (D. Ariz. 1995).

### 4. Deliberate indifference and sufficiently serious harm

The Eighth Amendment prohibits the imposition of cruel and unusual punishments and "embodies broad and idealistic concepts of dignity, civilized standards, humanity and decency." *Estelle v. Gamble*, 429 U.S. 97, 102 (1976) (citation and internal quotations omitted). In *Farmer v. Brennan*, the Supreme Court reiterated the standards for prevailing on an Eighth Amendment claim. 511 U.S. 825, 828 (1994). The court once again stated that "[a] prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment." *Id.*, citing *Helling v. McKinney*, 509 U.S. 25 (1993), *Wilson v. Seiter*, 501 U.S. 294 (1991), and *Estelle*, 429 U.S. 97. To establish an Eighth Amendment violation, a plaintiff's case must satisfy an objective standard -- that the deprivation was serious enough to amount to cruel and unusual punishment, and a subjective standard -- deliberate indifference. *See Wilson*, 501 U.S. at 297-304; *see also Farmer*, 511 U.S. at 834.

The subjective standard of deliberate indifference for Eighth Amendment liability requires "more than ordinary lack of due care for the prisoner's interests or safety." *Farmer*, 511 U.S. at 835, *quoting Whitley v. Albers*, 475 U.S. 312, 319 (1986). The requisite state of mind lies "somewhere between the poles of negligence at one end and purpose or knowledge at the other." *Id.* at 836. It is the equivalent of recklessly disregarding a substantial risk of serious harm to the inmate. *Id.*

"[D]eliberate indifference to a prisoner's serious illness or injury" is a violation of the Eighth Amendment prohibition against cruel and unusual punishment. *Estelle*, 429 U.S. at 105. In order to prove deliberate indifference, plaintiff must show that prison staff denied, delayed, or intentionally interfered with medical treatment or that the way prison staff provided medical care indicates deliberate indifference, and that plaintiff sustained damages as a result of such conduct.

8

*Hutchinson v. United States*, 838 F.2d 390, 394 (9th Cir. 1988). Indifference may be manifested by prison staff intentionally denying or delaying access to medical care or intentionally interfering with treatment once prescribed. *Estelle*, 429 U.S. at 104-05.

Mere negligence on the part of prison medical staff is not sufficient to prove deliberate indifference. *Id*. "A defendant must purposefully ignore or fail to respond to a prisoner's pain or possible medical need in order for deliberate indifference to be established." *McGuckin v. Smith*, 974 F.2d 1050, 1060 (9th Cir. 1992), *overruled in part on other grounds in WMX Technologies, Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997). Prison medical staff does not violate the Eighth Amendment simply because their opinions concerning medical treatment conflict with the opinion of the inmate-patient. *Franklin v. Oregon*, 662 F.2d 1337, 1344 (9th Cir. 1981). Failure to allow every requested visit to a doctor does not constitute medical indifference where the evidence shows that an inmate received medical treatment. *See Estelle*, 429 U.S. at 106-07.

## 5. Due process

The procedural guarantees of the Fourteenth Amendment's Due Process Clause apply only when a constitutionally-protected liberty interest is at stake. *See Tellis v. Godinez*, 5 F.3d 1314, 1316 (9th Cir. 1995). Liberty interests can arise both from the Constitution and from state law. *Wolff v. McDonnell*, 418 U.S. 539, 557-58 (1974). When deciding whether the Constitution itself protects an alleged liberty interest of a prisoner, the court should consider whether the practice or sanction in question "is within the normal limits or range of custody which the conviction has authorized the State to impose." *Meachum v. Fano*, 427 U.S. 215, 225 (1976). Regarding medical treatment, a prison inmate has no independent constitutional right to outside medical care additional and supplemental to the medical care provided by the prison staff within the institution. *See Estelle*, 429 U.S. at 103-04.

**6**. **Requirement of personal participation and respondeat superior**

"Liability under section 1983 arises only upon a showing of personal participation by the defendant.  A supervisor is only liable for constitutional violations of [her] subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them.  There is no respondeat superior liability under section 1983." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) (citation omitted); *see also Mabe v. San Bernardino County*, 237 F.3d 1101, 1109 (9th Cir. 2001).

Because there is no respondeat superior liability under § 1983, liability of a supervisor requires an affirmative act, or failure to act where there is an affirmative duty.  *Harris v. Roderick*, 126 F.3d 1189, 1204 (9th Cir. 1997).  For example, in *Harris* the court held that FBI supervisors were liable for the shooting of a defendant where the supervisors were alleged to have developed a plan that resulted in the shooting.  *Id*.  However, the court was careful to note that this was not liability under a theory of respondeat superior.  *Id*.  Rather, the supervisors were directly liable because of their affirmative acts.  *Id.*  "A supervisor may be liable if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Redman v. County of San Diego*, 942 F.2d 1435, 1446 (9th Cir. 1991) (en banc) (citation omitted).  "'The requisite causal connection can be established . . . by setting in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict the constitutional injury.'"  *Id*. at 1447, *quoting Johnson v. Duffy*, 588 F.2d 740, 743-44 (9th Cir. 1978).  The court noted that this is not a form of vicarious liability, but is direct liability.  *Id*.

**B.  Analysis**

Regarding personal participation, defendants argue that plaintiff has alleged no facts that

10

indicate Kenny Guinn, Jackie Crawford, E.K. McDaniel and Ted D'Amico personally participated in violating plaintiff's Eighth and/or Fourteenth Amendment rights (#30).  Plaintiff responds that Jackie Crawford, E.K. McDaniel and Ted D'Amico had knowledge of plaintiff's complaints that he received inadequate treatment and, later, no treatment for his skin condition because plaintiff filed kites and grievances with ESP and filed a complaint with NDOC (#17, 55).

Since there is no respondeat superior liability under § 1983, a supervisor is only liable for constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them.  *Taylor*, 880 F.2d at 1045.  "Liability under § 1983 must be based on the personal involvement of the defendant."  *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998).  Construing this *pro se* inmate plaintiff's pleadings liberally, *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (*per curiam*), the court finds that plaintiff sufficiently alleges that Jackie Crawford, E.K. McDaniel, and Ted D'Amico knew of the alleged Eighth Amendment violations and failed to act to prevent them (#17; 31, Ex. 2A, 2C).  However, plaintiff provides no specific allegations that Kenny Guinn participated in or had knowledge of alleged ESP and NDOC staff misconduct; therefore, plaintiff has failed to allege an essential element of his case as to Kenny Guinn (*See* #17, 55) *Celotex*, 477 U.S. at 323.  Thus, defendants' motion for summary judgment (#30) is granted as to Kenny Guinn.

Turning to the Eighth Amendment claims, defendants contend that plaintiff has presented no evidence demonstrating that he was denied medical treatment.  *Id*.  Defendants point to the summary of plaintiff's medical kites, which reflect that plaintiff has a congenital, incurable condition and that plaintiff has received at least seventeen different products or medications to treat his skin condition.  *Id*., Ex. A.  Defendants acknowledge that plaintiff's recent requests to see a dermatologist were denied.  *Id*.  However, defendants emphasize that plaintiff had seen a

dermatologist less than a year earlier and argue that prison doctors must be afforded the discretion to determine whether an inmate needs to see a specialist (#30).

Plaintiff attaches the affidavits of two cellmates. One cellmate attests that plaintiff suffers from skin that flakes and peels, leaving open cuts, scabs, red irritated areas and causes extreme itching (#37, Ex. A). The cellmate reports that plaintiff suffers most in the winter. *Id*. Another cellmate states that plaintiff did not suffer as much when he received treatment (#59). That cellmate attests that he purchased lotions, creams, etc., for plaintiff from the canteen, but these products did not alleviate plaintiff's symptoms. *Id*.

In plaintiff's supplement to his opposition he includes a December 10, 2005 kite in which Dr. MacArthur refused plaintiff's request for a medical appointment or treatment (#55, Ex. A). In that kite plaintiff complains that "store-bought cosmetics" do not work. *Id*. Plaintiff also states that he was seen by a doctor on or about December 14, 2005 (#55). Plaintiff attaches a notation from his medical file, apparently written by the doctor he saw on December 14, advising prison officials to consider transferring plaintiff to a prison in a warmer climate to try to alleviate plaintiff's symptoms. *Id*., Ex. B, C. Plaintiff claims that after many years of providing treatment, prison medical staff stopped providing treatment in 2004, despite his many kites describing his suffering (#55). Exhibit C is a list of physicians' orders that reflects notations regarding treatment and prescriptions in April, June, October, November and December 2005. *Id*., Ex. C. Plaintiff provides no explanation for the record and it is not possible for the court to determine whether most of the notations relate to plaintiff's icthyosis, except for the December suggestion of a transfer to a southern Nevada prison for the warmer climate. *Id*.

Unfortunately, plaintiff appears to suffer from an uncomfortable, painful, itchy condition; however, plaintiff has not demonstrated that defendants acted with deliberate indifference in

denying him medical treatment.  *Estelle*, 429 U.S. at 105.  In fact, defendants presented evidence that plaintiff has received extensive treatment over many years.  The record reflects that plaintiff's recent requests to see a dermatologist have been denied, and it appears medical staff have advised plaintiff to purchase skin products from the canteen (#30, Ex. A; #55, Ex. A).  However, Dr. MacArthur's affidavit states that over-the-counter products such as Vaseline are often used to treat icthyosis (#30, Ex. B).  The court finds that the responses to plaintiff's medical kites over the years appear to show that medical staff attempted to find treatments or combinations of treatments, including topical and oral prescription medications and over-the-counter products to alleviate the symptoms of plaintiff's incurable condition (#30, Ex. A).  Plaintiff's contention that medical staff have essentially ignored him since 2004 is belied by the doctor's December 2005 notation suggesting plaintiff be transferred to a warmer climate (#55, Ex. B).

Construing the allegations in the light most favorable to plaintiff, even if medical staff has denied plaintiff dermatologist visits since 2004 and directed him to use over-the-counter products, these actions do not evince deliberate indifference on the part of medical staff.  Defendants have not violated the Eighth Amendment simply because plaintiff disagrees with the doctors' opinions concerning his medical treatment.  *Franklin*, 662 F.2d at 1344.  Plaintiff also cannot meet the objective requirement that the alleged deprivation of medical care is serious enough to rise to cruel and unusual punishment because he has not demonstrated that he was deprived of necessary medical care.  *Farmer*, 511 U.S. at 298.

Regarding the alleged Fourteenth Amendment violation, plaintiff does not allege that any mechanism that might implicate due process exists to appeal prison officials' decision to deny him a dermatologist visit (*See* # 17, 55).  Because a prison inmate has no independent constitutional right to see an outside medical specialist, *see Estelle*, 429 U.S. at 103-04, plaintiff

cannot prevail on his Fourteenth Amendment claims.  The court notes that the fact that plaintiff was allowed to see a dermatologist less than a year before he made the request at issue further undermines his due process allegations.  Accordingly, defendants' motion for summary judgment (#30) is granted as to the remaining defendants.

In light of the court's grant of summary judgment motion, plaintiff's motion for preliminary injunction (#31/32) is denied as moot.  Plaintiff has not demonstrated a likelihood of success on the merits, the possibility of irreparable injury, or that he is likely to prevail on his Eighth Amendment claim, as required in order to obtain a preliminary injunction.  *Southwest Voter Registration Educ. Project*, 344 F.3d at 917.  Nor has plaintiff shown that serious questions going to the merits were raised and the balance of hardships tips sharply in his favor.  *Southwest Voter Registration Educ. Project*, 344 F.3d at 917.  Similarly, plaintiff's motion for default judgment (#49) is denied as moot.

### III. CONCLUSION

Based on the foregoing and for good cause appearing, the court concludes that plaintiff has not demonstrated that defendants violated his Eighth Amendment rights with respect to plaintiff's medical treatment.  As such, the court recommends that defendants' motion for summary judgment (#30) be granted.  The court further recommends that plaintiff's motion for a preliminary injunction (#31/32) be denied and that plaintiff's motion for default judgment (#49) be denied.

The parties are advised:

1.   Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule IB 3-2 of the Local Rules of Practice, the parties may file specific written objections to this report and recommendation within ten days of receipt.  These objections should be entitled "Objections to Magistrate Judge's Report and

14

1  Recommendation" and should be accompanied by points and authorities for consideration by the

2  District Court.

3      2.   This report and recommendation is not an appealable order and any notice of appeal

4  pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment.

5

6                    **IV.  RECOMMENDATION**

7      **IT IS THEREFORE RECOMMENDED** that defendants' motion for summary

8  judgment (#30) be **GRANTED**.

9      **IT IS FURTHER RECOMMENDED** that plaintiff's motion for preliminary injunction

10 (#31/32) be **DENIED**.

11

12     **IT IS FURTHER RECOMMENDED** that plaintiff's motion for default judgment (#49)

13 be **DENIED**.

14     **DATED:** April 24, 2006.

15

16

17

18 _____

19                **UNITED STATES MAGISTRATE JUDGE**

20

21

22

23

24

25

26

27

28

                          15